**AUDUBON INDEMNITY COMPANY, as Subrogee of Comanche Contractors, Inc., Appellant,**

v.

**CUSTOM SITE–PREP, INC., Appellee.**

**No. 01–10–00489–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 28, 2011.

Rehearing and En Banc Reconsideration Overruled Aug. 29, 2011.

Loren R. Smith, Kelly, Smith & Murrah, P.C., Houston, TX, for Appellant.

Craig Von Sternberg, Bruce Martin Feichtinger, Whitting Von Sternberg, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices SHARP and BROWN.

## OPINION

HARVEY BROWN, Justice.

This appeal primarily concerns the enforceability of an indemnity clause in a written construction contract between a general contractor, Comanche Contractors, Inc., and its subcontractor, CSP Site–Prep, Inc., signed after the completion of the project. In a related arbitration proceeding, the arbitrator concluded that Comanche breached its construction contract with Fort Bend County Child Advocates, Inc. and, through CSP's subcontracted work, negligently performed work on that project. The arbitrator awarded Child Advocates over $250,000 in actual damages. Audubon Indemnity Company, acting as subrogee to Comanche, sued CSP to recover for Comanche's liability under an indemnity provision in the written subcontract agreement. Both Audubon and CSP filed traditional summary judgment motions. The trial court granted CSP's motion and denied Audubon's motion.

Audubon contends that the trial court erred in granting CSP's motion because (1) Audubon had a valid indemnity claim based on an indemnity clause that was supported by consideration and that satisfied the fair notice requirements for indemnity provisions, (2) Audubon had a valid breach of contract claim for CSP's alleged failure to obtain insurance, and (3) Audubon raised valid objections to CSP's summary judgment evidence. Audubon

also contends that the trial court erred in denying its traditional summary judgment motion because the evidence demonstrates it was entitled to indemnity as a matter of law.

We hold that the trial court could not have properly granted summary judgment on the basis of CSP's defense that the written subcontract lacked consideration. We also hold that the fair notice requirements do not apply to Audubon's indemnification claim. Because fair notice does not invalidate the indemnity provision and a fact issue exists on consideration, the trial court improperly granted summary judgment on all of Audubon's indemnity claims. We also hold that the trial court improperly granted summary judgment on Audubon's breach of contract claim for failure to obtain insurance.

We therefore reverse the judgment of the trial court.

**Factual Background**

This lawsuit arises out of the alleged defective construction of the Child Advocates' office building and Child Advocates' successful arbitration claim against Comanche. Child Advocates hired Comanche as the general contractor on the project. Comanche, in turn, hired CSP as the subcontractor to perform the earthwork to prepare the site pad before beginning construction on the building. Comanche and CSP had worked together on many projects in the past and about 75% to 80% of CSP's business came from Comanche.

Child Advocates had originally hired an architect to prepare detailed plans and specifications for the building. Those plans and specifications called for a three-foot building pad and a certain quality of materials to be used in the pad. Comanche and CSP submitted their bids on the project based on those plans.

Comanche's contract with Child Advocates, however, was later modified because of cost concerns. According to Comanche and CSP, Jeff Nesmith at Child Advocates instructed Comanche to do an "abbreviated" version of the pad and merely level the site as a result of budget concerns.[1] Under the terms of the oral agreement between Comanche and Child Advocates, CSP was to level the building pad and keep track of the amount of dirt necessary for the project and Child Advocates would "reimburse" Comanche for the expenses.

Consistent with the two companies' past practices, Comanche and CSP operated pursuant to an oral agreement and did not have a written contract until after CSP completed the earthwork on the building pad. It is undisputed between Comanche and CSP that they both understood and agreed that CSP's work was not supposed to conform to the original plans and specifications. Comanche and CSP did not discuss indemnity or specify a set price at the time of the oral agreement.[2] Nor does the record show that they discussed whether their oral agreement was subject to a subsequent written agreement.

CSP completed the earthwork. On May 21, CSP sent an invoice to Comanche and on June 24, Comanche cut a check for the amount invoiced. On June 25, CSP's president, James Stokley, executed a sworn application and certificate for payment in which he stated that "the Work covered by

---

1. Nesmith did not testify at the arbitration between Comanche and Child Advocates. The executive director of Child Advocates testified that she was unaware of such an agreement and took the position that Nesmith had no authority to enter into such an agreement.

2. The parties describe their agreement as a "cost-plus" arrangement, but there is no evidence that they reached an agreement on a percentage to add to the CSP's costs.

this Application for Payment has been completed in accordance with the Contract Documents." Before Comanche tendered the check to CSP, Comanche's vice-president, Chris Parrack, signed and sent a written "subcontract agreement" to CSP. The subcontract agreement stated that Comanche would provide all of the materials, equipment, and labor needed for the project's earthwork "in accordance with the Drawings and Specifications prepared by Jim Gwen Architects." The agreement also required CSP to obtain any insurance necessary or incidental to the completion of its work and contained an indemnity clause which read:

> 7. [CSP] agrees to indemnify and hold [Comanche] and [Child Advocates] wholly harmless from any damages, claims, demands or suits by any person or persons, arising out of or resulting from the execution of the work provided in this subcontract or occurring in connection therewith, excluding liability for negligence of [Comanche] or [Child Advocates] except in connection with general supervision of work performed by [CSP].

Finally, the agreement contained a merger clause stating in capital letters, "ALL NEGOTIATIONS AND AGREEMENTS PRIOR TO THE DATE OF THIS AGREEMENT NOT INCLUDED HEREIN ARE HEREBY VOIDED."

Stokley signed the subcontract agreement on behalf of CSP on July 13. Comanche did not tender payment to CSP until after Stokley signed the contract. Stokley testified in his affidavit that Comanche informed him that "the only purpose" for the written subcontract was so Comanche "had a written document in its file relating to its payment" of CSP's invoice. Both Parrack and Stokley testified that Comanche typically required CSP to sign a written, form subcontract agree-

ment before Comanche paid for the work performed. Both also testified that these written agreements were generally signed after CSP completed its work. Parrack testified that the form subcontract agreements always included an indemnity provision of some kind.

Stokley testified that he never read the entirety of the form agreements; he typically only read the terms regarding the price. He further testified that the parties had never discussed indemnity until the issue arose in this dispute and that he does not understand how indemnity operates.

Child Advocates sued Comanche over construction problems discovered after the building was completed and the trial court directed the parties to arbitrate. The arbitrator found that "[Comanche] breached the agreement with Child Advocates to construct the under slab building pad in accordance with the plans and specifications and Comanche, through its subcontractor, [CSP], negligently constructed the under slab building pad resulting in subsequent damage to tangible property of Child Advocates." The arbitrator awarded construction costs, attorney's fees, prejudgment interest, and arbitration costs for Child Advocates and against Comanche. Audubon, as Comanche's insurance carrier, paid $296,360 for Comanche's construction costs and prejudgment interest damages. Audubon subsequently filed this action against Comanche's subcontractor, CSP, for contractual indemnity and breach of contract to recover the damages paid.

### Procedural Background

Audubon and CSP filed cross-motions for traditional summary judgment. Audubon contended that it was entitled to contractual indemnity as a matter of law. The trial court denied Audubon's motion. CSP filed its summary judgment motion

two years after the denial, contending that the indemnity clause was unenforceable because it was not supported by consideration, among other grounds. The trial court denied CSP's motion in August 2009. Three months later, Audubon filed its Sixth Amended Petition.

The trial court set the case for trial on March 9, 2010. The day before the trial setting, Audubon non-suited several claims against CSP so that only the indemnity and breach of contract claims remained.[3] At the March 9 trial setting, the trial court requested additional briefing on the indemnity issue. CSP and Audubon submitted additional briefs, and the trial court had another hearing on March 19. At the hearing, the trial court withdrew its 2009 denial of CSP's traditional summary judgment motion and granted the motion. Audubon timely appealed the trial court's ruling on both summary judgment motions.

## Standard of Review

We review a trial court's ruling on a summary judgment de novo. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex.2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch Power, Inc.,* 186 S.W.3d 145, 148 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and "render the judgment that the trial court should have rendered." *FM Props. Oper-*

*ating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). The motion must state the specific grounds relied upon for summary judgment. *See* TEX.R. CIV. P. 166a(c). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. When reviewing a summary judgment motion, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life Accid. Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003).

## Valid and Enforceable Subcontract Agreement

In its first issue, Audubon contends that the trial court erred in granting CSP's traditional summary judgment motion because the subcontract agreement was valid and enforceable. CSP asserts that the subcontract agreement was unenforceable because it had already completed performance when the parties signed the contract, and therefore, the written agreement and its additional terms were not supported by consideration. Audubon responds that CSP's lack of consideration defense is barred by the parol evidence rule and

---

**3.** Audubon non-suited claims for breach of express warranty, breach of implied warran-

ty, and common law indemnity.

merger doctrine and, alternatively, that the subcontract agreement was supported by consideration.[4]

## A. Parol Evidence Rule

Audubon contends that the parol evidence rule and the related doctrine of merger prevent this court from considering CSP's lack of consideration claim because it would require looking outside the four-corners of the written subcontract agreement. "The parol evidence rule provides that the terms of a written contract cannot be contradicted by evidence of an earlier, inconsistent agreement." *Baroid Equip., Inc. v. Odeco Drilling, Inc.,* 184 S.W.3d 1, 13 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). The application of the parol evidence rule is a question of law that we review de novo. *DeClaire v. G & B McIntosh Family Ltd.,* 260 S.W.3d 34, 45 (Tex.App.-Houston [1st Dist.] 2008, no pet.). The rule particularly applies when the written contract includes a merger clause or similar language. *Baroid Equip.,* 184 S.W.3d at 13.

We may consider parol evidence, however, "to show want or failure of consideration, and to establish the real consideration given for an instrument." *DeLuca v. Munzel,* 673 S.W.2d 373, 376 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). *See also* RESTATEMENT (SECOND) OF CONTRACTS §§ 213 cmt. d, 214(d) (1981). We may consider parol evidence to determine if consideration exists "even though the parties have reduced their agreement to a writing which appears to be a completely integrated agreement." RESTATEMENT (SECOND) OF CONTRACTS § 218(2). We may also consider parol evidence to determine whether the parties intended a written agreement as a memorialization of their

agreement (and therefore only had one contract) or a modification of the prior oral contract (and therefore had two contracts, each of which needed independent consideration as discussed below). *See id.* at § 210(3) ("Whether an agreement is completely or partially integrated is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule."); Mark K. Glasser & Keith A. Rowley, *On Parol: The Construction and Interpretation of Written Agreements and the Role of Extrinsic Evidence in Contract Litigation,* 49 BAYLOR L.REV. 657, 705–707 (1997).

We therefore reject Audubon's assertion that we cannot consider parol evidence for the limited purpose of determining CSP's lack of consideration defense.

## B. Consideration

Audubon contends that it presented evidence showing that the subcontract agreement was in fact supported by consideration. Audubon specifically asserts, among other grounds, that the course of dealing between the parties demonstrates that the execution of a subsequent written subcontract agreement was a term of all the oral agreements between the parties through their many years of collaboration.

CSP and Audubon disagree on what the subcontract agreement represents—a modification of the oral agreement between Comanche and CSP requiring independent consideration or a written memorialization of the parties' oral agreement fully contemplated as an accepted part of their transactions over the years. If the terms of a subsequent written contract differ from what the parties intended

---

4. We address Audubon's contentions regarding the parol evidence rule because it raised the issue in its brief. At oral argument, however, Audubon conceded that the parol evidence rule does not bar extrinsic evidence to show lack of consideration.

in their original oral agreement—i.e., if the written contract modified the agreed upon terms—the written contract requires new consideration. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228–29 (Tex.1986); *Walden v. Affiliated Computer Servs.*, 97 S.W.3d 303, 314 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Whether a contract has been modified depends on the parties' intentions and is a question of fact. *Hathaway*, 711 S.W.2d at 228–29; *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 580–81 (Tex.App.-San Antonio 1998, pet. denied) (holding whether document constituted modification of prior lease agreement was fact issue properly presented to jury); *Williams v. L.M.S.C., Inc.*, No. 01–03–00924–CV, 2005 WL 2469876, at *6 (Tex. App.-Houston [1st Dist.] Oct. 6, 2005, pet. denied).

■■■■ On the other hand, if the written contract is merely the parties' written memorialization of their oral agreement, or if the other "form" terms are to be included in the written memorialization based on the parties' understanding and intent, no separate consideration is required. Parties may enter into an oral contract with the understanding that they will later execute a formal writing that memorializes their agreement. *See Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 745 (Tex.1988); *Murphy v. Seabarge, Ltd.*, 868 S.W.2d 929, 933–34 (Tex.App.-Houston [14th Dist.] 1994, writ denied) ("Actions may manifest an intent to be bound to an agreement, even though the parties may expressly provide a formal contract will be executed in the future."); *Cothron Aviation, Inc. v. Avco Corp.*, 843 S.W.2d 260, 263–64 (Tex. App.-Fort Worth 1992, writ denied). Whether they intend to be bound, with or without the execution of a final written contract, is normally a question of fact for the jury. *Foreca*, 758 S.W.2d at 745 (quoting A. Corbin, *Corbin on Contracts* § 30 at 97 (1963)). *See also Murphy*, 868 S.W.2d at 933–34 ("Whether the parties intended to be bound in the absence of the execution of a contemplated final written agreement is a question of fact"); *Cothron*, 843 S.W.2d at 263–64 ("Parties rarely express a direct intention as to the moment when they conceive themselves to be bound by a contract.... As a consequence intention is usually an inference to be drawn by the fact finder from other facts and circumstances in evidence.") (quoting *Simmons & Simmons Constr. Co. v. Rea*, 155 Tex. 353, 286 S.W.2d 415, 417 (1955)). The parties may enter into an oral agreement regarding certain preliminary terms, but intend to be bound only if they reach an agreement on a final written document. *Foreca*, 758 S.W.2d at 745. The parties' intent to be bound, or lack thereof, determines whether a contract existed before the writing. *See also Murphy*, 868 S.W.2d at 933–34.

■■■■ If Comanche and CSP intended to be bound by their oral agreement and that agreement did not contemplate the terms included in the parties' subsequent written agreement, the written subcontract modified the oral agreement and is not supported by consideration. Alternatively, if the parties entered into an oral agreement regarding certain preliminary terms but intended to be bound only if they reached an agreement on a final written document, or if the parties intended that their agreement incorporated the terms in the "form" subcontract historically used by the parties, the written subcontract was their only agreement and is supported by consideration.

The summary judgment record does not establish the parties' intentions as a matter of law. Comanche and CSP had an extensive course of dealing in that they worked together for over 10 years with Comanche supplying 75% to 80% of CSP's

business at the time of the Child Advocates' project. Representatives of both CSP and Comanche testified in their respective depositions that, before the Child Advocates construction project, the parties routinely executed a written subcontract agreement after CSP completed performance. They used the form contract many times before the Child Advocates' project and for years after the project. Parrack, as Comanche's vice-president, further testified that the subcontract written agreements included indemnity provisions similar to the one at issue here.[5] CSP did not dispute this evidence.

As the summary judgment movant, CSP had the burden of conclusively showing that the written subcontract constituted a modification requiring independent consideration. It did not satisfy that burden. The parties' regular practice of executing written contracts containing indemnity provisions after CSP's performance is some evidence that, at the time of their oral agreement, the parties intended that they would memorialize their agreement in a written contract containing an indemnity provision, and therefore no additional consideration was necessary. The only evidence CSP advanced was the uncontested testimony that the parties did not discuss the indemnity provision at the time of the oral contract. But that evidence alone does not conclusively prove that, at the time of the oral agreement, the parties intended that their oral agreement would be binding and did not intend that it include the "form" contract terms adopted

by the parties in previous transactions. CSP also did not conclusively prove the parties' subjective intentions, and the circumstances here are not so compelling that we can conclude that intent as a matter of law. CSP therefore did not prove that it was entitled to judgment as a matter of law on the grounds of lack of consideration.

We sustain Audubon's first issue regarding lack of consideration.

## C. Fair Notice

■■■ In the remainder of its first issue, Audubon contends that the trial court erred in granting CSP's summary judgment motion because the indemnity clause is valid and enforceable. CSP responds that the fair notice requirements bar Audubon's claim and that the language of the provision excludes indemnity for claims by Child Advocates.[6] CSP further asserts that Audubon must demonstrate fault on CSP's part to trigger indemnity under the language of this provision and no legal or factual basis exists to find CSP at fault.

### 1. Was Fair Notice Properly Before the Trial Court?

Before we address the merits of CSP's fair notice contention, we must first address whether this ground for summary judgment was before the trial court. This ground for summary judgment is not contained in CSP's summary judgment motion. It is, however, contained in its response to Audubon's summary judgment motion. Fair notice also appears in its

---

5. The language of the indemnity provision may have changed over the years, but Parrack's testimony is evidence that the written subcontract agreements between the parties routinely contained indemnity provisions.

6. We reject CSP's contention that the indemnity provision excludes indemnity for Comanche based on claims by Child Advocates. The indemnity provision when it states that

"[CSP] agrees to indemnify and hold [Comanche] and [Child Advocates] wholly harmless from any damages, claims, demands, or suits by any person or persons ..." We read the "and" between Comanche and Child Advocates as instead extending the indemnity protection to both rather than excluding indemnity claims between the two.

supplemental brief on indemnity filed three days before the final summary judgment hearing. Audubon responded to this contention in its own supplemental brief filed two days before the summary judgment hearing. Over six months later, two briefs were filed by the parties in response to the trial court's request at the pretrial conference on March 9.

 We conclude that the issue of fair notice was properly before the trial court. Pursuant to Texas Rule of Civil Procedure 166, a trial court may dispose of legal issues during a pretrial conference. *Walden*, 97 S.W.3d at 322. *See also Para–Chem S., Inc. v. Sandstone Products, Inc.*, No. 01–06–01073–CV, 2009 WL 276507 at *17 (Tex.App.-Houston [1st Dist.] Feb. 5, 2009, pet. denied) ("A trial court may summarily dispose of issues at a Rule 166 pretrial conference when the trial court determines that no fact issues remain and the issues may be determined as a matter of law."). Because the fair notice ground was raised as part of the pretrial conference, we apply the standard of review for directed verdicts to this basis for the trial court's ruling. *See Walden*, 97 S.W.3d at 324; *Para–Chem*, 2009 WL 276507, at *17.

### 2. Does Fair Notice Apply?

Audubon contends that the fair notice requirements do not apply to Audubon's indemnity claim against CSP to recover for the Child Advocates' successful breach of contract claim. Alternatively, Audubon contends that the indemnity clause satisfies the fair notice requirements.

 "An indemnity agreement is a promise to safeguard or hold the indemnitee harmless against either existing and/or future loss liability" and provides the indemnitee with a cause of action to recover against the indemnitor. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). Most contract provisions involve a certain degree of risk-shifting, but some provisions involve such an "extraordinary shifting of risk" that courts impose additional fair notice requirements to make the provision enforceable. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex.1997); *Dresser*, 853 S.W.2d at 508; *Amtech Elevator Serv. Co. v. CSFB 1998–P1 Buffalo Speedway Office Ltd.*, 248 S.W.3d 373, 377 (Tex.App.-Houston [1st Dist.] 2007, no pet.). The fair notice requirements are (1) the express negligence doctrine and (2) the conspicuousness requirement. *Amtech Elevator Serv.*, 248 S.W.3d at 377. The express negligence doctrine dictates that a party's intent to be released or indemnified from its own future negligence must be clear and unambiguous. *Green Int'l*, 951 S.W.2d at 386. The conspicuousness requirement means that "something must appear on the face of the [contract] to attract the attention of a reasonable person." *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex.2004) (quoting *Dresser*, 853 S.W.2d at 508).

 The fair notice requirements apply when "one party exculpates itself from its own future negligence." *Green Int'l*, 951 S.W.2d at 387; *DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 885 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (holding fair notice does not apply "where an indemnitee is seeking indemnification from claims not based on the negligence of the indemnitee."). In *DDD Energy Inc.*, the indemnity clause required each contracting party to indemnify the other for its individual negligence resulting from claims by a third party. *DDD Energy*, 60 S.W.3d at 884. Nothing in the indemnity clause shifted responsibility for DDD Energy's negligence onto the other contracting party. *Id.* The court of appeals affirmed summary judgment and held that the fair notice requirements

identified in *Dresser* are limited to claims for indemnity based on the indemnitee's own negligence. *Id.* at 885. *See also English v. BGP Int'l, Inc.*, 174 S.W.3d 366, 375 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

 The indemnity provision here does not require CSP to indemnify Comanche for Comanche's negligence, except for damages resulting from Comanche's negligent supervision of CSP. The fair notice requirements, therefore, do not apply to Audubon's indemnity claim arising from the arbitrator's findings of negligence and breach of contract against Comanche based on CSP's negligence.

CSP contends that nothing in the record supports a finding that it was negligent, and therefore nothing justifies shifting any portion of the arbitration award to CSP. We disagree with CSP's contention. The arbitrator's award states that Comanche breached its agreement with Child Advocates "to construct the under slab building pad in accordance with the plans and specifications and Comanche, through its subcontractor, [CSP], negligently constructed the under slab building pad ..." The arbitrator did not find any negligence by Comanche in the construction of the building pad or designate any findings of negligent supervision.

Because fair notice is limited to when a contracting party shifts its own negligence onto another party, CSP has not proven that the fair notice requirements bar Audubon's indemnity claim as a matter of law. *See DDD Energy*, 60 S.W.3d at 885. Fair notice, therefore, does not bar the enforceability of the indemnity provision.

We sustain the Audubon's first issue.

### Audubon's Summary Judgment

In its fourth issue, Audubon contends that the trial court erred in denying its traditional summary judgment motion because it proved it was entitled to indemnity as a matter of law. Audubon further asserts that it conclusively negated CSP's affirmative defenses raised in response to Audubon's summary judgment motion.

As stated above, CSP failed to prove conclusively that Audubon was not entitled to indemnity under the terms of the subcontract agreement. But the same fact issue that undermines CSP's summary judgment claim undermines Audubon's as well. While CSP did not establish a modification as a matter of law, we cannot say that Audubon proved the parties intended to be bound only by the terms of the written subcontract agreement. For its own summary judgment motion, Audubon bore the burden of proof. But just as CSP offered no evidence of the parties' intentions, Audubon also offered no evidence of their intentions beyond the parties' general course of dealing. The evidence that the parties had never discussed indemnity at any time and CSP never knew of the existence of the indemnity provisions undercuts Audubon's contention that the parties agreed to these terms in advance due to their regular practices. In other words, a fact issue exists on whether the subcontract agreement modifies or memorializes the parties' oral agreement and summary judgment was improper for either party. The trial court properly denied Audubon's summary judgment motion, and rendition on Audubon's motion is inappropriate. Because Audubon did not satisfy its summary judgment burden, we need not address CSP's affirmative defenses in response.

We overrule Audubon's fourth issue.

### Breach of Contract for Failure to Obtain Insurance

In its third issue, Audubon contends the trial court erred in granting CSP's sum-

mary judgment motion because the motion did not address Audubon's breach of contract claim against CSP for failure to obtain liability insurance as required by the subcontract agreement. CSP responds by reiterating its contention that the subcontract agreement was not supported by consideration and, therefore, was not valid and enforceable. Alternatively, CSP asserts that the issue of liability insurance is moot because the CSP has no obligation to indemnify Audubon.

When CSP filed its motion for summary judgment, Audubon's live pleading, its fourth amended petition, alleged that CSP breached the subcontract agreement to "secure insurance *in favor of Comanche* ..." (emphasis added). CSP asserted two arguments in its summary judgment that could have defeated Audubon's claims: (1) the subcontract agreement was not enforceable because it was not supported by consideration and (2) the plain language of the subcontract agreement did not require CSP to obtain insurance covering Comanche specifically. After CSP moved for summary judgment, but more than 21 days before the court heard the motion on March 19, Audubon filed its sixth amended petition in which it rephrased this breach of contract claim to state:

> Additionally, at least one of CSP's insurance carriers has asserted a coverage defense in this case; to the extent that the defense is valid and CSP does not have coverage to protect itself from the property damage claims asserted in this case, CSP breached its contract with Comanche.

CSP did not amend its summary judgment motion to address this change in Audubon's pleading.

We conclude that CSP's summary judgment addressed Audubon's breach of contract on the issue of insurance by challenging the entire subcontract agreement based on lack of consideration. As discussed above, summary judgment was improper based on this ground, and CSP did not conclusively negate its indemnity obligation to Audubon. Summary judgment was, therefore, improper regarding Audubon's breach of contract claim for failure to obtain insurance.[7]

We sustain Audubon's third issue.

## Conclusion

We sustain Audubon's first and third issues on appeal and hold that the trial court improperly granted CSP's summary judgment on the basis of lack of consideration and lack of a valid and enforceable indemnity provision based on the fair notice requirements. Because summary judgment was improper, we need not address Audubon's remaining contention regarding its objections to CSP's summary judgment evidence. We overrule Audubon's fourth issue and hold that a fact issue exists on whether the written subcontract agreement required new consideration, and the trial court properly denied Audubon's summary judgment motion.

We reverse the judgment of the trial court and remand for further proceedings.

---

7. Audubon also asserts it raised a breach of contract for failure to use the correct quality of dirt for the building pad. Audubon raised this issue as a breach of express warranty claim, which it subsequently non-suited before the trial court's summary judgment hearing. Therefore, the contention was not properly raised before the trial court.