**Affirmed and Memorandum Opinion filed April 2, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00698-CV

---

## C&F INTERNATIONAL, INC., Appellant / Cross-Appellee

### V.

## INTEROIL SERVICES, LLC, Appellee / Cross-Appellant

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2015-33978**

---

### MEMORANDUM OPINION

Interoil Services, LLC sued C&F International, Inc. (CFI) for breach of an oral contract and quantum meruit for commissions that CFI owed to Interoil resulting from the companies' business transactions with a third party (Schahin) after Schahin failed to pay its debts. CFI counterclaimed for breach of a written contract, claiming indemnity for losses from the Schahin transactions. A jury found that the written contract applied, awarded CFI damages of $1,044,910.02, and awarded Interoil damages of $1,140,991.65. Each party moved for entry of a

judgment, claiming attorney's fees, pre- and post-judgment interest, and costs. Each party disputed the other party's claims for attorney's fees and interest. The trial court signed a final judgment awarding Interoil $96,081.63 in damages, $95,200.00 in attorney's fees, pre- and post-judgment interest, and costs.

Each party appealed. In four issues, Interoil contends that the trial court erred by (1) failing to construe the written contract as a matter of law to exclude the Schahin transactions from being covered by the indemnity clause, and (2) enforcing the indemnity clause. In two issues, CFI contends that the trial court erred by (1) awarding attorney's fees, interest, and costs to Interoil because Interoil did not prevail on any claim, and (2) denying CFI's request for attorney's fees.

We affirm.

## I.    BACKGROUND

For more than a decade, Schahin was CFI's customer. Schahin was involved in oil drilling and would use CFI to source and purchase equipment. Schahin would inform CFI what products Schahin needed, CFI would present quotes to Schahin, and CFI would purchase equipment and sell it to Schahin. CFI would finance the sales for up to 360 days.

David Haese was the head of the oil and gas department at CFI, which did the purchasing and sales for Schahin. CFI's Chief Financial Officer Matthias Lietsch testified that Haese "brought that business. He was the connection to that business. He was the lifeline to this. He was basically the know-how carrier." Lietsch testified that Schahin was Haese's customer and nobody at CFI "really understood this business besides David Haese and his team."

In 2003, CFI informed Haese and the rest of the employees in his department that CFI was terminating their employment because CFI no longer

2

wanted to be in the oil field supply business. However, Haese and his department were "spun out" to form Interoil, which continued to do "all the work" for Schahin. Haese was the president of Interoil.

CFI and Interoil entered into services agreements in 2003 and 2009, whereby Interoil leased office space from CFI and would receive administrative and back-office support from CFI, among other services. Sections 1(a) and 4 of the 2009 agreement provided for profit-sharing and indemnity to CFI regarding sales to "customers of Interoil":

> 1. Services. To support the activities of Interoil in the United States, and in accordance with the instructions of Interoil, but subject to the terms of this Agreement, CFI shall provide the following services (the "*Services*"):
>
> a. CFI may, in its discretion and as agreed upon by CFI and Interoil on a case-by-case basis, accept orders from customers of Interoil, and such transactions shall be conducted under CFI's risk management guidelines, and CFI shall perform such transactions in accordance with the terms thereof (singularly, a "*CFI Sale*", and collectively, the "*CFI Sales*");
>
> . . . .
>
> 4. CFI Sales. For each CFI Sale, CFI and Interoil shall agree, on a case-by-case basis, on a profit share which shall be payable by CFI to Interoil once all payments for the CFI Sale have been collected by CFI from the customer. . . . Interoil hereby indemnifies and holds CFI harmless from and against any losses or damages arising from or relating to the failure of any customer to pay any amounts due and owing under any of the CFI Sales which are not reimbursed by export credit insurance.

Lietsch testified that CFI acted "like a bank" for Interoil, providing a line of credit and obtaining credit insurance for the Schahin transactions. Lietsch testified that the 2009 agreement applied to "basically, again, only Schahin business." In negotiations for the 2009 agreement, Lietsch wrote to Haese and others that the

agreement was "a mutually agreeable profit sharing agreement on business that is routed via CFI's books, in order to secure financing and risk management (credit insurance) on certain business (Shahin) [sic], which could be extended to other customers."

In 2010, CFI and Schahin entered into a procurement agreement, which provided that Schahin "hereby appoints CFI as [Schahin]'s exclusive procurement representative, to globally source products, machinery and equipment in accordance with specifications issued by [Schahin]." Lietsch testified that the purpose of the procurement agreement, and CFI's practice of invoicing and accepting payment from Schahin, was so that the transactions could be covered by CFI's credit insurance. Haese testified that Interoil did "all of the work" on the Schahin transactions and retained a majority of the profits from those transactions. In emails, Interoil employees repeatedly referred to Schahin as "our customer."

In 2013 or 2014, Schahin stopped paying its bills, and CFI stopped paying commissions owed to Interoil under the 2009 services agreement because their exposure on the Schahin transactions exceeded the amount of commissions owed to Interoil. CFI relied on the indemnity clause of Section 4 of the agreement. CFI acknowledged that the unpaid commissions amounted to $1,140,991.65. Haese, citing Section 4 of the agreement, made multiple demands for payment of the commissions owed.

Interoil sued CFI for the unpaid commissions, asserting claims for breach of an oral agreement and quantum meruit. CFI counterclaimed for breach of the 2009 services agreement, relying on the indemnity clause in Section 4. At trial, CFI admitted through its evidence and through arguments that it owed Interoil $1,140,991.65 in unpaid commissions, but CFI asked the jury to award CFI the amount of its losses on the Schahin transactions. CFI claimed $3,879,860.25 in

4

"total Schahin loss" after accounting for its credit insurance and mitigation of damages, as follows:

Unpaid balance from Schahin: $1,014,820.79

Order backlog (equipment CFI purchased): $30,089.23

Interest: $2,816,914.81

Travel expenses for collection efforts: $18,035.42

Neither party objected to the first three questions in the jury charge, which asked:

**Question 1**

Were the Schahin transactions in question "CFI Sales" as that term is used in Paragraph 1(a) of the 2009 agreement?

Answer "Yes" or "No."

Answer: _____

**Question 2**

For the Schahin transactions in Question 1 that you found to be "CFI Sales" under the 2009 Services Agreement, what sum of money should be paid to Interoil?

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

Consider the following elements of damages, if any, and none other:

Profit share based on the gross profit (sales minus (a) cost of goods sold, (b) interest expenses and (c) export credit insurance).

Answer: _____

**Question 3**

For the Schahin transactions in question 1 that you found to be "CFI Sales" under the 2009 Services Agreement, what sum of money should be paid to C&F International, Inc.?

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

Consider the following elements of damages, if any, and none other:

> Losses or damages arising from or relating to the failure of any customer to pay any amounts due and owing under any of the CFI Sales which are not reimbursed by export credit insurance.

Answer: _____

The remaining questions concerned Interoil's claims for breach of an oral contract and quantum meruit. The parties stipulated to the amounts of reasonable and necessary attorney's fees: $113,356.00 for CFI and $95,200.00 for Interoil. The parties did not stipulate regarding the legal availability of fees, which depended on the verdict from the jury.

Interoil argued to the jury that Schahin was not "Interoil's customer," and therefore, the Schahin transactions were not "CFI Sales." Interoil asked the jury, nonetheless, to award Interoil $1,140,991.65 in damages under Question No. 2 if the jury believed the 2009 services agreement applied to the Schahin transactions.

The jury answered the questions as follows: (1) Yes; (2) $1,140,991.65; and (3) $1,044,910.02. The jury did not answer the remaining questions because they were predicated on a "no" answer to Question No. 1.

Each party moved for entry of a judgment in its favor. CFI calculated the judgment it sought by adding pre-judgment interest to its damages award, then subtracting Interoil's damages, and adding CFI's attorney's fees. Interoil sought a judgment for the net difference in damages awarded by the jury, $96,081.62, plus attorney's fees and pre-judgment interest. Interoil also filed a motion for judgment notwithstanding the verdict, asserting that the indemnity clause failed "fair notice" requirements, so CFI was not entitled to any damages (and Interoil was entitled to the full $1,140,991.65 in damages plus fees and interest).

6

The trial court signed a final judgment awarding Interoil $96,081.62 in damages, $95,200.00 in attorney's fees, $13,939.00 in pre-judgment interest, post-judgment interest, and costs. Both parties appealed.

## II. INTEROIL'S APPEAL

In its first two issues, Interoil contends that the "unambiguous language of the underlying contracts is a legal issue to be decided by the trial court as a matter of law" and that "[p]ursuant to the plain language of the underlying contracts, the Schahin Entities were the direct customer of [CFI] as a matter of law." In its third and fourth issues, Interoil contends that CFI "was not entitled to indemnification as awarded by the jury as a matter of law" and the "indemnification clause relied on by [CFI] is unenforceable as a matter of law."

### A.  Contractual Interpretation Issues Not Preserved

Under the first two issues, Interoil contends that the Schahin transactions were not "CFI Sales" as a matter of law, contrary to the jury's finding, and that the trial court was required to rule on the plain meaning of the 2009 services agreement and the 2010 procurement agreement as a matter of law. Interoil contends that it made three attempts to obtain rulings from the trial court based on the language of the underlying contracts and to enforce the plain and unambiguous meaning of the contracts: (1) motion for summary judgment; (2) request for a directed verdict; and (3) motion for judgment notwithstanding the verdict.

When a trial court denies a motion for summary judgment and the case is tried on the merits, the order denying the summary judgment cannot be reviewed on appeal. *United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). The party's remedy is to assign error to the trial court's judgment ultimately rendered following the trial on the

7

merits. *Id.* To preserve error for a "matter of law" challenge to the trial court's judgment following a jury trial, an appellant must raise the issue through one of the following means: (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. *See, e.g.*, *Ginn v. Pierce*, No. 14-17-00742-CV, 2019 WL 4511328, at *1 (Tex. App.—Houston [14th Dist.] Sept. 19, 2019, no pet. h.); *Tasdemiroglu*, 25 S.W.3d at 916.

Although Interoil raised its contractual-interpretation issues in a motion for summary judgment, Interoil did not request a directed verdict at trial, nor did it raise this issue in its motion for judgment notwithstanding the verdict. Interoil did not object to the submission of Question No. 1, move to disregard the jury's answer, or move for a new trial. Accordingly, Interoil failed to preserve error for its "matter of law" issues regarding whether the Schahin transactions were "CFI Sales" under the 2009 services agreement. *See Tasdemiroglu*, 25 S.W.3d at 916.

Interoil's first two issues are overruled.

## B. Fair Notice Not Required

In its third and fourth issues, Interoil contends that the indemnity clause is unenforceable because it provides indemnification for CFI's "negligent credit decisions" and is not conspicuous.

To be enforceable, "extra-ordinary risk shifting clauses must meet certain fair notice requirements." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 386 (Tex. 1997). Such clauses must be "conspicuous" as defined by Texas's version of the Uniform Commercial Code. *Id.* Extraordinary risk-shifting clauses include

8

"releases and indemnity clauses in which one party exculpates itself from its own future negligence." *Id.* at 387.

In *Solis*, the supreme court rejected an argument that the fair-notice requirements should apply to a no-damages-for-delay clause. *Id.* The court distinguished its prior cases concerning the shifting of tort and negligence damages, whereas the clause in *Solis* shifted only "economic damages resulting from a breach of contract." *Id.*

Interoil argues that CFI's loss was due to "its own negligent credit decisions." But the pleadings in this case do not show that CFI was seeking indemnity for its own negligence. Interoil did not request a fact-finding on whether CFI was negligent, and neither the jury nor the court made such a finding. The record does not conclusively establish that CFI's loss was due to its own negligence. Rather, the record shows that CFI's loss was based on economic damages resulting from a third-party's breach of contract. *See id.* Because the record does not show that CFI was seeking indemnity from its own negligence, conspicuousness is not required. *See DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 885 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that the fair-notice requirements do "not apply where an indemnitee is seeking indemnification from claims not based on the negligence of the indemnitee"); *cf. Audubon Indem. Co. v. Custom Site-Prep Inc.*, 358 S.W.3d 309, 320 (Tex. App.—Austin 2011, no pet.) (holding that fair notice was not required for a subcontractor to indemnify a contractor because although the indemnity provision applied to some negligence of the contractor, the indemnity claim arose from an arbitrator's findings of negligence and breach of contract against the contractor that were based on the subcontractor's negligence).

Interoil's third and fourth issues are overruled.

9

## III. CFI'S APPEAL

In its first issue, CFI asks "[w]hether the Trial Court properly awarded Interoil Services LLC attorneys' fees, pre- and post-judgment interest, and costs of court?" In its second issue, CFI asks, "[w]hether the Trial Court erroneously denied C&F International, Inc.'s request for attorneys' fees when CFI prevailed on all of its claims for affirmative relief?"

### A. Interoil's Breach of Written Contract Claim Tried by Consent

In its first issue, CFI contends that Interoil did not prevail on any of its claims—breach of an oral contract or quantum meruit. CFI argues that Interoil "did not seek any relief under the 2009 Services Agreement." CFI challenges only the award of attorney's fees, interest, and costs. CFI does not challenge the award of damages, arguing that "the judgment should be modified to reflect that CFI prevailed on its claims and that the most that should be awarded to Interoil is the net payment required under the 2009 Services Agreement."

CFI does not cite to any rule of procedure, statute, or case law for this issue, nor does CFI provide this court with a legal framework within which to resolve the issue. Assuming without deciding that CFI's first issue is not waived due to inadequate briefing, we will address the merits of the issue as much as reasonably possible. *See St. John Missionary Baptist Church v. Flakes*, No. 18-0513, 2020 WL 593694, at *2, *4 (Tex. Feb. 7, 2020) (reaffirming that "courts of appeals retain their authority to deem an unbriefed point waived in lieu of requesting additional briefing" but noting that appellate courts should reach the merits of an appeal whenever reasonably possible); *see also* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Alexander v. Citibank N.A.*, No. 14-04-01087-CV, 2006 WL 89517, at *1 (Tex. App.—Houston [14th Dist.]

10

Jan. 17, 2006, no pet.) (mem. op.) (appellant waived both issues on appeal by failing to cite to legal authority other than the rules of evidence).

A trial court's judgment must conform to the pleadings, *see* Tex. R. Civ. P. 301, and a trial court cannot render a judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent. *Herrington v. Sandcastle Condo. Ass'n*, 222 S.W.3d 99, 102 (Tex. App.—Houston [14th Dist.] 2006, no pet.). "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tex. R. Civ. P. 67. The rule for trial by consent is intended to cover the exceptional case in which the record clearly shows the parties tried an unpleaded issue. *Herrington*, 222 S.W.3d at 102.

In *Ingram v. Deere*, for example, the Supreme Court of Texas held that an issue was tried by consent when both parties presented evidence on the subject and allowed the issue to be raised in the jury charge. *See* 288 S.W.3d 886, 893 (Tex. 2009); *see also Sage Street Assoc. v. Northdale Const. Co.*, 863 S.W.2d 438, 446 (Tex. 1993) (ambiguity of contract tried by consent because the parties allowed a damages question to go to the jury and there was conflicting testimony on the subject).

Interoil did not assert in its live petition a claim based on CFI's breach of the 2009 services agreement. But both parties adduced evidence that CFI owed Interoil commissions under the 2009 services agreement. The jury charge did not ask whether either party breached the 2009 services agreement, but it asked whether the Schahin transactions were "'CFI Sales' as that term is used in Paragraph 1(a) of the 2009 Services Agreement." The charge then asked the jury "what sum of money should be paid to Interoil" and instructed the jury about what "elements of damages" to consider. CFI did not object to the jury question about

11

Interoil's damages under the 2009 services agreement. CFI told the jury that it agreed with Interoil's entitlement to damages under the 2009 services agreement:

> Number 2, if you answered yes [to Question No. 1], your answer here should be $1.1 million. In fact, I'll give you the exact number. We calculated it. It's $1,140,991.65. I agree with [counsel for Interoil] that that's our number and that's the amount that Interoil would be entitled to under the 2009 agreement.

Because the parties adduced evidence about what CFI was owed under the 2009 services agreement and then asked the jury to determine Interoil's "damages" under the agreement, the issue was tried by consent. *See Ingram*, 288 S.W.3d at 893.

Interoil included in its petition a request for attorney's fees under Section 38.001 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . an oral or written contract."). Because Interoil recovered damages on a claim for a written contract, Interoil was entitled to attorney's fees. *See id.*; *see also Solis*, 951 S.W.2d at 390. And because Interoil was successful and obtained a money judgment, Interoil was entitled to costs, *see* Tex. R. Civ. P. 131, pre-judgment interest, *see Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 533 (Tex. 1998), and post-judgment interest, *see* Tex. Fin. Code § 304.003(a).

CFI's first issue is overruled.

## B.     No Attorney's Fees for Claim Against Limited Liability Companies

In its second issue, CFI contends that the trial court "erroneously denied CFI's request for attorneys' fees presumably on a rationale that a net recovery is required for a party to obtain an award for attorney's fees," citing *McKinley v.*

*Drozd*.  *See* 685 S.W.2d 7, 10–11 (Tex. 1985) (holding that net recovery was not required under predecessor statute to Section 38.001, and the statute allowed recovery of attorney's fees "even if the amount of the claim is entirely offset by an opposing party's claim").

It is undisputed that Interoil is a limited liability company.  CFI alleged in its live petition that Interoil is "an Ohio limited liability company."  A party cannot recover attorney's fees under Section 38.001 against a limited liability company. *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 455 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).  Thus, the trial court did not err by overruling CFI's request for attorney's fees.  *See Beard v. Endeavor Nat. Gas, L.P.*, No. 01-08-00180-CV, 2008 WL 5392026, at *8 (Tex. App.—Houston [1st Dist.] Dec. 19, 2008, pet. denied) (mem. op.) ("Here, the trial court did not reveal the basis for the denial of attorney's fees, and thus we may uphold its ruling on any basis supported by the evidence."); *Smith v. McCarthy*, 195 S.W.3d 301, 305 (Tex. App.—Fort Worth 2006, pet. denied) (same); *Sharp v. Hobart Corp.*, 957 S.W.2d 650, 654 (Tex. App.—Austin 1997, no pet.) (same).

CFI's second issue is overruled.

## IV.   CONCLUSION

The parties' issues are overruled.  The trial court's judgment is affirmed.


/s/     Ken Wise
Justice


Panel consists of Chief Justice Frost and Justices Wise and Hassan.


13