Alan NALLE, Appellant,

v.

TACO BELL CORP. and Austaco, Inc., Appellees.

No. 03–95–00166–CV.

Court of Appeals of Texas, Austin.

Jan. 17, 1996.

Rehearing Overruled Feb. 28, 1996.

Earl Landers Vickery, Price & Vickery, Austin, for Appellant.

John H. Akin, Pearce, Smith & Akin, Austin, for Appellee.

Before POWERS, ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Appellant Alan Nalle leased property to appellee Taco Bell Corporation for use in the operation of a Taco Bell restaurant franchise held by appellee Austaco, Inc. When Austaco ceased operating the restaurant and began using Nalle's property as a storage facility, Nalle sued Taco Bell and Austaco in district court for breach of the lease. The district court granted summary judgment in favor of both appellees, and Nalle now appeals. We will affirm the judgment of the district court.

## THE CONTROVERSY

In 1976, Jim Ray leased the premises in question, located at 9600 North Lamar in Austin, to Taco Bell. Taco Bell subleased the premises to Austaco, which held a franchise to operate a Taco Bell restaurant at that location. Nalle is Ray's successor-in-interest, having bought the premises in 1989.

The lease has a fixed twenty-year term and provides that Taco Bell "may use the demised premises for the purpose of conducting thereon the business of a TACO BELL retain (sic) food outlet and for incidental purposes related thereto, or for any other legally permissible business or commercial venture as shall be provided by Lessor in writing." As compensation to Nalle, Taco Bell must pay monthly the higher of two figures: a fixed sum of $1350 or five percent (5%) of the restaurant's gross sales. Taco Bell has the obligation to pay all taxes, insurance, and repairs on the premises.

Austaco operated a Taco Bell restaurant on the property from the inception of the lease until April 1993, at which time it closed the restaurant and began using the property as an equipment storage facility. In addition, Austaco began operating a new Taco Bell restaurant located approximately one block from Nalle's property. Before Austaco closed the restaurant in 1993, gross sales had always yielded monthly payments to Ray and Nalle of an amount in excess of the $1350 base rent. After closing the restaurant, Austaco tendered only the base rent because the property no longer generated sales income.

Aggrieved by the loss of percentage rentals, Nalle filed suit in district court, alleging that Taco Bell[1] had breached the lease. Taco Bell moved for summary judgment, arguing that the lease did not require it to continue operating the premises as a restaurant so Nalle would receive percentage rentals in an amount above the $1350 base rent. Nalle responded with two alternative arguments: (1) the lease expressly required Taco Bell to continue operating a restaurant on the premises, or (2) the lease contained an implied covenant that Taco Bell would do so.

---

1. For the sake of convenience, we will hereinafter refer to appellees collectively as "Taco Bell."

The trial court granted summary judgment for Taco Bell, holding that the lease did not expressly or impliedly require Taco Bell to continue operation of the restaurant on the premises. Nalle now appeals.

## DISCUSSION

Nalle first argues that the lease expressly requires Taco Bell to continue operating a restaurant on the leased premises. Taco Bell argues that the lease provision simply permits it to operate the restaurant, but does not require it to do so. We agree with Taco Bell. The meaning of language used in a contract is a question of law. *Birdwell v. Ferrell*, 746 S.W.2d 338, 339 (Tex. App.—Austin 1988, no writ). The lease provides that Taco Bell "may use" the premises for operating a Taco Bell restaurant. The word "may" means possibility, permission, liberty, or power; it does not indicate a mandatory requirement. Black's Law Dictionary 979 (6th ed.1990). Nalle asks us to read the lease as though it provided that Taco Bell "must" use the premises to operate a restaurant. We decline to do so. We interpret a word in a contract according to its usual grammatical meaning unless it clearly appears that the parties intended otherwise. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Birdwell*, 746 S.W.2d at 340. The record does not clearly demonstrate that the parties meant "must" when they used the word "may" in the lease. Therefore, we adhere to the plain language of the lease and hold that it does not expressly require Taco Bell to continue operation of a restaurant on the leased property. *See Weil v. Ann Lewis Shops, Inc.*, 281 S.W.2d 651, 654 (Tex.Civ.App.—San Antonio 1955, writ ref'd) (similar clause held not to create express obligation that lessee must begin or continue doing business).

Nalle's second and primary argument is that the trial court erred in interpreting the lease by failing to imply a "covenant of continuous operation" obligating Taco Bell to operate a restaurant on the premises throughout the lease period.[2] Taco Bell responds that courts imply covenants only in rare circumstances not applicable here. We agree with Taco Bell that, as a matter of law, an implied covenant of continuous operation is improper on the record before us.

Texas law does not favor implied covenants. *Atlantic Richfield Co. v. Exxon Corp.*, 663 S.W.2d 858, 870 (Tex.App.—Houston [14th Dist.] 1983), *rev'd on other grounds*, 678 S.W.2d 944 (Tex.1984). As a general rule, we look only to the written contract to discern the obligations of the contracting parties. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex.1981); *Danciger Oil & Ref. Co. v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941). We will look beyond the written agreement and imply a covenant only if it is "necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole." *Danciger*, 154 S.W.2d at 635. An implied covenant is sufficiently necessary to the parties' intentions only if the obligation "was so clearly within the contemplation of the parties that they deemed it unnecessary to express it...." *Id.* We will not imply a covenant simply because it is needed to make the contract fair, wise, or just. *Id.; Weil*, 281 S.W.2d at 655.

We find the holding in *Weil v. Ann Lewis Shops, Inc.*, 281 S.W.2d 651 (Tex.Civ. App.—San Antonio 1955, writ ref'd), persuasive and applicable to the case at bar. In *Weil*, the court construed a lease, very similar to the one in the instant appeal, that provided for a monthly payment to lessor of $650 or 5% of gross sales from the business,

2. In his brief to this Court, Nalle also argues that additional implied covenants may be read into the lease, e.g. an implied covenant not to divert rental profits from the lessor. In his pleadings and response to Taco Bell's motion for summary judgment in the trial court, however, Nalle raised only the implied covenant of continuous operation. Therefore, Nalle has waived appellate consideration of other implied covenants as grounds for reversal of the summary judgment. Tex. R.Civ.P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) (Non-movant need not respond to motion for summary judgment to challenge the adequacy of movant's grounds, but any additional or different grounds for avoiding summary judgment will be waived if not presented in a response).

whichever was greater. The lessee corporation never began conducting business on the leased premises and tendered only the fixed rent; the lessor then sued, arguing that the lessee was bound by an implied covenant to conduct the business contemplated in the lease throughout the entire term of the agreement. *Id.* at 653–54. The San Antonio court held that the existence of the fixed rental clause prevented the implication of a covenant of continuous operation because the lease had been extensively negotiated and the fixed rent served as reasonable protection for the lessor in case the lessee failed to conduct a certain level of business. The court refused, as a matter of law, to imply the covenant because it was not plainly necessary to effectuate the intent of the parties nor obviously within their contemplation. *Id.* at 655–56. The supreme court refused writ in *Weil*, indicating that the opinion was correct and that we must accord it the binding precedential value of a supreme court case. Tex.R.App.P. 133(a); *'21' Int'l Holdings, Inc. v. Westinghouse Elec. Corp.*, 856 S.W.2d 479, 483 (Tex.App.—San Antonio 1993, no writ); *Ohler v. Trinity Portland Cement Co.*, 181 S.W.2d 120, 123 (Tex.Civ.App.—Galveston 1944, no writ).

Nalle argues that *Weil* is distinguishable because the lessee never began doing business on the leased premises, whereas in this appeal Taco Bell conducted business for many years. We find the distinction unpersuasive because it was not important to the *Weil* court's rationale. The *Weil* court based its holding not on the specific nature of the obligation that the lessee sought to imply, i.e. to begin and continue conducting business, but rather on the absence of any indication that such an obligation was clearly within the contemplation of the parties:

> The contract was well written and quite lengthy. It seems to cover the parties' entire understanding. It is plain and unambiguous, and we see no reason to write into this contract a stipulation which the parties themselves did not see fit to place therein . . . .

*Weil*, 281 S.W.2d at 656. Our analysis is supported by the rule that the decision whether to imply a covenant of continuous operation must be evaluated at the time the parties signed the lease agreement. *See Danciger*, 154 S.W.2d at 635; *Palm v. Mortgage Inv. Co.*, 229 S.W.2d 869, 874 (Tex.Civ. App.—El Paso 1950, writ ref'd n.r.e.). Subsequent transactions between the leasing parties, such as the failure to occupy in *Weil*, are therefore irrelevant to our implied covenant analysis. We hold that the rationale in *Weil* applies to this appeal and is controlling precedent.

In support of his position, Nalle offers two opinions in which Texas appellate courts held that commercial lessees breached their leases by ceasing or scaling-back business operations. *See Lilac Variety, Inc. v. Dallas Tex. Co.*, 383 S.W.2d 193, 195 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e); *Marvin Drug Co. v. Couch*, 134 S.W.2d 356, 361 (Tex.Civ. App.—Dallas 1939, writ dism'd judgm't cor.). We find both cases distinguishable. In *Lilac Variety*, the lease expressly required that certain specific tenants be "doing business" throughout the lease term. Because the court found the express language of the lease controlling, it did not address the existence of an implied covenant, which is the relevant issue in this appeal. *Lilac Variety*, 383 S.W.2d at 194–96. The *Marvin Drug* court did imply a covenant of continuous operation, but the lease at issue provided that the lessor would receive *only* a percentage of gross sales but no fixed rent. The court held that it was proper to imply a covenant of continuous operation because the lessor's rental depended entirely upon gross sales. *Marvin Drug*, 134 S.W.2d at 358. The court reasoned that the parties clearly intended the lessor to receive compensation and, because the lessor would only be compensated from the proceeds of gross sales, the lessee was required to generate such sales to provide the required compensation. *Marvin Drug* does not apply to this appeal because Nalle receives $1350 in fixed monthly rent. Taco Bell need not continue doing business to satisfy its clear obligation to compensate Nalle because Nalle is compensated even when Taco Bell does no business.

Finally, appellant relies upon an opinion from the California Supreme Court for the proposition that a commercial lease

with an "inadequate or insubstantial" fixed rent contains an implied covenant of continuous operation because it is analogous to a lease with no fixed rent. *See Lippman v. Sears, Roebuck & Co.*, 44 Cal.2d 136, 280 P.2d 775, 780–81 (1955) (*"Lippman II"*). Nalle maintains that his lease did not provide an "adequate" minimum rental and therefore contains an implied covenant of continuous operation. Although *Marvin Drug* established that Texas law implies a covenant of continuous operation if a lease contains no fixed rental, the question whether a lease with an "inadequate" fixed rental also contains such a covenant is one of first impression in this state. The *Weil* court did not address this issue, though it quoted from an earlier opinion in *Lippman* that the California Supreme Court subsequently vacated after reconsidering the adequacy issue and delivering the opinion in *Lippman II*. *See Weil*, 281 S.W.2d at 655–56 (quoting *Lippman v. Sears, Roebuck & Co.*, 271 P.2d 891, 897 (Cal.1954), *vacated by Lippman II*).

In this appeal, we find it unnecessary to decide whether Texas subscribes to the California "adequacy" rule. The record before us demonstrates that the fixed rent in the lease was substantial and adequate as a matter of law. Jim Ray, the original lessor and Nalle's predecessor in interest, stated in an affidavit submitted by Nalle that the minimum rent covered his financing obligations. In addition, the lease obligated Taco Bell to pay taxes, insurance, repairs, and upkeep expenses. Evaluated at the time the lease was signed, this fixed rent was sufficiently adequate and substantial to prevent the implication of a covenant of continuous operation. Therefore, even if Texas were to follow the California adequacy rule, it would not apply to the lease at issue here.

We hold that the trial court properly refused to imply a covenant of continuous operation into the lease, making summary judg-

ment in favor of Taco Bell appropriate as a matter of law.[3]

## CONCLUSION

Because the lease at issue does not contain an express or implied obligation that Taco Bell must continue to operate a restaurant on the leased premises, we affirm the trial court's summary judgment.

---

3. Nalle also brings two points of error challenging the trial court's summary judgment that Nalle wrongfully terminated the lease. In its summary judgment order, however, the trial court expressly severed the wrongful termination issue and placed it under a new cause number to make the judgment in the instant cause final and appealable. Therefore, we do not have jurisdiction to consider the wrongful termination issue

in this appeal because Nalle has not appealed from a final judgment disposing of that issue. *See* Tex.Civ.Prac. & Rem.Code Ann. § 51.012 (West 1986) (appeal must be taken from final judgment); *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex.1993) (an appealable, final judgment must dispose of all parties and issues before the trial court).