Quicksilver Resources, Inc. v. Reliant Energy Services, Inc. and Reliant Energy Resources, Inc.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-249-CV

QUICKSILVER RESOURCES, INC. APPELLANT

V.

RELIANT ENERGY SERVICES, INC. APPELLEES

AND RELIANT ENERGY RESOURCES, INC. 

------------

FROM THE 352
ND
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This case involves a dispute over a contract for the sale of natural gas.  Appellant Quicksilver Resources, Inc. (“Quicksilver”) filed a suit for breach of contract against Reliant Energy Services, Inc. and Reliant Energy Resources, Inc. (collectively “RES”), alleging that RES had breached a provision of the contract requiring the parties to share profits when the gas is sold for an amount in excess of the contract price.  RES moved for summary judgment on the ground that the provision was not mandatory.  The trial court granted RES summary judgment, and Quicksilver brought this appeal.  We affirm the trial court’s judgment.

I.  FACTUAL SUMMARY

On May 11, 1999, Quicksilver contracted with RES for the sale of natural gas at a fixed price over a ten-year period.  The contract consisted of a “Master Gas Purchase and Sale Agreement” that set out the general terms of the parties’ agreement and two one-page “Transaction Confirmation” sheets that stated the volume and fixed price of the gas to be purchased.  The agreed upon minimum price was $2.49 per mmbtu.  The parties considered the agreement and the confirmation sheets to be one agreement.

This lawsuit revolves around the interpretation of the duties, if any, created by a “Special Provision” in the confirmation sheets.  The Special Provision provides:

From time to time, RES or Quicksilver 
may
 encounter opportunities for optimizing the value of this Gas supply.  In those events, either party 
may
 
propose
 a 50-50 profit sharing arrangement with the other party. Pursuant to such transactions, the parties 
may
 obtain incremental transportation to capture these opportunities, in which event the profits to be shared would take into account all costs and expenses associated with each transaction.  [Emphasis added.]

Until July 2000, RES shared with Quicksilver the profits realized from various opportunities to maximize the value of the gas, resulting in payments to Quicksilver of approximately $2,000,000.  During late 2000 and early 2001, however, gas prices started to rise and peaked at over $10 per mmbtu, and according to Quicksilver, RES no longer discussed profit sharing opportunities with Quicksilver.  When Quicksilver made inquiries regarding price opportunities to optimize the gas, RES responded “we will work on it,” but did not answer the requests or provide any information.  Quicksilver subsequently filed this suit seeking to enforce the profit sharing language in the Special Provision.

II.  LEGAL ANALYSIS

In three issues, Quicksilver argues that the trial court erred in granting RES summary judgment because (1) Quicksilver established that RES did not perform its contractual obligations in good faith, (2) the parties’ course of performance illustrates that the Special Provision should be interpreted as requiring equal profit sharing, and (3) RES did not move for summary judgment on all of Quicksilver’s claims.

A.  Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.
(footnote: 2)  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.
(footnote: 3)  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.
(footnote: 4)
 In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.
(footnote: 5)  Evidence that favors the movant's position will not be considered unless it is uncontroverted.
(footnote: 6)  The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.
(footnote: 7)
 A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff’s cause of action cannot be established.
(footnote: 8)  The defendant as movant must present summary judgment evidence that negates an element of the plaintiff’s claim.
(footnote: 9)  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.
(footnote: 10)  
Questions of law are appropriate matters for summary judgment.
(footnote: 11)
B.  Contract Interpretation

In its first and second issues, Quicksilver argues that the trial court erred in granting RES summary judgment because the evidence proves that RES failed to comply with the Special Provision and the parties’ course of performance supports Quicksilver’s interpretation that the Special Provision requires a 50/50 sharing of the profits.  Quicksilver contends that the Special Provision contains mutual provisions giving each party the right to inquire concerning an “optimization opportunity,” which is an opportunity to maximize the value of the gas, and obligations to respond to each other’s inquiries.  Quicksilver argues that the Special Provision also contains an implied obligation requiring RES to respond to Quicksilver’s optimization inquiries in good faith because each party has the right to learn of opportunities discovered or created by the other and to propose a profit sharing arrangement.  We disagree.

Quicksilver correctly states that every clause in a contract should be construed so that every word is given meaning.
(footnote: 12)  We are also required to give every word its plain meaning unless otherwise directed by the contract.
(footnote: 13)  Neither party pled or argued below that the contract was ambiguous.
(footnote: 14)  Accordingly, we construe the contract as a question of law,
(footnote: 15) and it is our “duty to give the words used their plain meaning.”
(footnote: 16)
 Quicksilver’s arguments are, however, attenuated at best.  The Special Provision states that the parties “may encounter” various opportunities.  When such opportunities are encountered, either Quicksilver or RES “may propose” a profit sharing arrangement.  Not only does the Special Provision use the word “may,” but it also uses the word “propose” to describe the parties’ agreement.  “May” is a discretionary term,
(footnote: 17) and “propose” means “to put forth for consideration [or] approval.”
(footnote: 18)  Giving these terms their plain meaning, we hold as a matter of law that the Special Provision is discretionary, not mandatory.
(footnote: 19)
 Quicksilver argues that the Special Provision should be interpreted to mean that if one party asks the other for information about the disposition of gas or other market factors, the other party must respond.  According to Quicksilver, to construe the provision otherwise would render meaningless the right to make a proposal when the other party encounters the opportunity.  We disagree with this interpretation because the plain meaning of the words used in the Special Provision establish that the right to propose is discretionary.
(footnote: 20) There is no requirement that a proposal be accepted; therefore by implication, it could be rejected.  Thus, even though Quicksilver repeatedly asked RES about optimization opportunities, RES was not, under the terms of the Special Provision, obligated to respond.

Quicksilver argues that the uniform commercial code provides that contract terms can be explained or supplemented by the parties’ course of performance
(footnote: 21) and offers numerous letters, e-mails, and invoices to show that the parties’ course of performance under the Special Provision establishes that the parties intended profit sharing to be mandatory.  For example, Quicksilver argues that a letter from RES to Quicksilver dated March 18, 1999, which stated, “[RES] ha[s] agreed to share profits for any optimization of this supply,” shows RES’s intent that the Special Provision require the parties to share profits.  Like the Special Provision, however, the letter states that either party can propose potential market opportunities for sharing profits.  As we have noted, this language is discretionary.
(footnote: 22)
 Quicksilver points out that in another letter dated August 3, 1999, RES agreed to share any profits realized if a specific opportunity proved rewarding.  Quicksilver relies on several other similar letters and e-mails to establish that RES agreed to share profits with Quicksilver.  Quicksilver argues that RES breached the contract when it stopped responding to Quicksilver’s requests for information in late 2000 and early 2001.  We believe RES’s course of performance offering to share profits on some, but not all, opportunities is additional evidence indicator that the parties intended the language in the Special Provision to be discretionary.
(footnote: 23)  Further, because RES had no contractual duty to accept Quicksilver’s proposal for a continued profit-sharing arrangement, RES did not breach the contract by ignoring Quicksilver’s inquiries.  That is, its right to review a proposal and deny it. 

Accordingly, we hold that the Special Provision did not require RES to respond to Quicksilver’s requests for optimization of profits from opportunities created or discovered by RES and that the parties’ course of performance establishes the discretionary nature of the Special Provision.  We overrule Quicksilver’s first and second issues.

C.  Summary Judgment on All of Quicksilver’s Claims

Quicksilver argues in its third issue that the trial court erred when it rendered summary judgment on all of Quicksilver’s claims because RES’s motion for summary judgment failed to address Quicksilver’s estoppel defense.  Concerning estoppel, Quicksilver pled that “based upon the course of performance by [RES], [RES] is estopped from claiming that the Special Provision obligates it to do nothing.”  Because Quicksilver’s estoppel defense was based on the parties’ course of performance, which we have held establishes the discretionary, rather than mandatory, nature of the Special Provision, we overrule Quicksilver’s third issue.  Quicksilver cannot prevail on this defense, and reversal on summary judgment would be meaningless.
(footnote: 24)

III.  CONCLUSION

Having overruled each of Quicksilver’s issues, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: CAYCE, C.J.; and DAUPHINOT, J. 

LIVINGSTON, J. recused.

FOOTNOTES
1:
See
 
Tex. R. App. P. 47.4.

2:
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).

3:
S.W. Elec. Power Co., 
73 S.W.3d at 215;
 Rhone-Poulenc, Inc. v. Steel,
 997 S.W.2d 217, 223 (Tex. 1999); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

4:
Great Am.
, 391 S.W.2d at 47.

5:
Rhone-Poulenc,
 997 S.W.2d at 223; 
Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).

6:
Great Am.
, 391 S.W.2d at 47.

7:
Clear Creek Basin
, 589 S.W.2d at 678.

8:
Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).

9:
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).

10:
Id.

11:
Rhone-Poulenc
, 997 S.W.2d at 222.

12:
Yancey v. Floyd West & Co.
, 755 S.W.2d 914, 198 (Tex. App.—Fort Worth 1988, writ denied) (citing 
Blaylock v. Am. Guar. Bank
, 632 S.W.2d 719, 721 (Tex. 1982)).

13:
Heritage Res., Inc. v. NationsBank
, 939 S.W.2d 118, 121 (Tex. 1996).

14:
MCI Telecomm., Corp. v. Tex. Util. Elec. Co.
, 993 S.W.2d 663, 668 (Tex. App.—Fort Worth 1996), 
rev’d on other grounds
, 995 S.W.2d 647 (Tex. 1999).

15:
See id.

16:
Puckett v. U.S. Fire Ins. Co.
, 678 S.W.2d 936, 938 (Tex. 1984).

17:
Nalle v. Taco Bell Corp.
, 914 S.W.2d 685, 687 (Tex. App.—Austin 1996, writ denied) (citing Black’s Law Dictionary 979 (6th ed. 1990)).

18:
Webster’s New World Compact Desk Dictionary
 387 (2
nd
 ed. 2002).

19:
See id.

20:
See Heritage Res. Inc
., 939 S.W.2d at 121; 
see al
s
o Nalle
, 914 S.W.2d at 687.

21:
Tex. Bus. & Com. Code Ann
 § 2.202 (Vernon Supp. 2003).

22:
See Nalle
, 914 S.W.2d at 687.

23:
See 
Tex. Bus. & Com. Code Ann. 
at 2.208 cmt. 1 (stating that “the parties know best what they have meant by their words of agreement and their action under that agreement is the best indication of what that agreement was”); 
see also Krupp Org. v. Belin Cmtys., Inc.
, 582 S.W.2d 514, 519 (Tex. Civ. App.—Houston [1
st
 Dist.] 1979, writ ref’d n.r.e.).

24:
See Withrow v. State Farm Lloyds
, 990 S.W.2d 432, 437-38 (Tex. App.—Texarkana 1999, pet. denied) (affirming a summary judgment on causes of action not specifically addressed in movant’s motion where reversing the summary judgment would be meaningless because the omitted cause of action was precluded as a matter of law); 
see also Vogel v. Travelers Indem. Co.
, 966 S.W.2d 748, 754 (Tex. App.—San Antonio 1998, no pet.); 
Bieganowski v. El Paso Med. Ctr. Joint Venture
, 848 S.W.2d 361, 362 (Tex. App.—El Paso 1993, writ denied).